UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                                      Case No. 8-14-74725-reg

Leslie Etwaroo, Jr.,

                         Debtor.                       Chapter 13
------------------------------------------------------------------x

## MEMORANDUM DECISION

      Before the Court is a motion by Leslie Etwaroo (the "Debtor"), under § 1329(a) of the Bankruptcy Code, to modify his confirmed Chapter 13 Plan (the "Plan"). The Debtor seeks to eliminate an $800 step up in plan payments for approximately three years of the Plan due to the extension of his obligation to make higher child support payments for an additional three years beyond what was contemplated under the confirmed Plan. This would result in a total decrease in plan payments of almost $28,000. The Chapter 13 Trustee (the "Trustee") filed limited opposition. The Trustee argues that Debtor's motion to modify cannot be analyzed in a vacuum. Rather, he argues that upon the Debtor's motion to modify to decrease plan payments, the Court must conduct a new income and expense analysis—without regard to the "means test" analysis detailed in 11 U.S.C. § 1325(b) that was conducted at the time of original confirmation. The Trustee argues that, using such an approach, the Debtor has actual disposable income sufficient to continue making the monthly payments under the originally confirmed Plan.

      Chapter 13 of the Code embodies a statutory scheme requiring a debtor, in order to secure a discharge of debts, to make payments to his creditors. In return, the Chapter 13 debtor is permitted to retain his property. The mechanism by which this tradeoff is memorialized is a Chapter 13 plan—filed by the debtor and then confirmed by and evinced in an order of the court. The plan establishes the amount the debtor will be required to pay creditors through a complex

financial analysis—the "means test"—designed to eliminate much of the bankruptcy judge's discretion and utilizing a largely fictional, standardized expense calculation for above-median income debtors. These standardized expense deductions often allow debtors to claim expenses in excess of actual expenses.

After a plan is confirmed, § 1329 permits debtors, creditors and trustees to seek a modification of the otherwise final plan. When a post-confirmation modification will be entertained, and whether and how disposable income is calculated at the time of the modification, are difficult questions not answered directly by the words of the statute. In previous decisions, this Court has attempted to balance a respect for the finality of the original confirmation order with § 1329, which contemplate that a confirmed plan may be modified in certain circumstances. This Court held in *In re Salpietro*, 492 B.R. 630, 639 (Bankr. E.D.N.Y. 2013), that a creditor or trustee's § 1329 motion seeking an upward modification of a confirmed plan must demonstrate a debtor's bad faith or non-compliance with the plan. *Id.* The Court also stated that upon a creditor or trustee meeting this necessary threshold, a debtor may be subject to an upward modification of plan payments if the debtor has failed to "commit to the plan a realized increase in that debtor's income or earnings." *Id.* Subsequently, in *In re Roberts*, 514 B.R. 358 (Bankr. E.D.N.Y. 2014), this Court held that on a debtor's §1329 motion seeking downward modification "[i]t is within the discretion of the Court, vested by § 1329(a), to modify a debtor's plan to reduce the amount of the plan payments if the debtor has experienced a loss of income." *Id.* Even where there is a loss of income, however, such loss will not be considered in isolation; rather, in *Roberts*, the Court left open the possibility that a loss of income should be weighed contextually in a renewed analysis of actual income and expenses at the time of modification. *Id.* at 365.

In the case at hand, the Debtor essentially is asking the Court to decrease monthly plan payments based upon an increase in the Debtor's expenses. The Debtor asks this Court to focus on one expense in isolation without considering his actual ability to continue making the monthly payments under the confirmed Plan. The Debtor argues that to the extent this Court's decisions in *Salpietro* and *Roberts* hold that the Court should re-examine income and expenses upon a modification, those decisions are in error. The Court disagrees, and will not alter its prior holdings.

While the Debtor is within his rights to seek a downward modification based upon a material increase in expenses, the Court will not consider the motion in isolation. Rather, the Court finds that it is appropriate to consider the Debtor's actual income and actual expenses at the time of modification—separate and apart from the means test standardized calculations—to determine whether the Debtor can, in fact, continue to make monthly payments under the confirmed Plan.

## FACTS

The Debtor filed a Chapter 13 petition on October 20, 2014 (the "Petition Date"). On April 17, 2015, the Court confirmed the Debtor's Second Amended Chapter 13 Plan. Pursuant to the Plan, the Debtor was to make plan payments of: $1,500.00 per month from November 21, 2014 through October 21, 2015; $2,300.00 per month from November 21, 2015 through February 21, 2017; $2,665 from March 21, 2017 through September 21, 2018; $3,465 from October 21, 2018 through June 21, 2019; and $3,528 from July 21, 2019 through October 21, 2019. The Plan payments provide for a *pro rata* distribution of not less than 5% to unsecured creditors. The Plan further provides that "[t]he future earnings of the debtor(s) are submitted to the supervision and control of the trustee…." The Plan Confirmation Order also provides that all future income,

earnings or other property of the Debtor which are "proposed, or reasonably contemplated, to be distributable to claimants under the plan" remain property of the estate.[1]

On December 3, 2015, the Debtor moved to modify the Plan to decrease the Plan payments between November 21, 2015 through September 21, 2018 by $800 per month. According to the Debtor's motion, this proposed modification reflects the fact that the Debtor's child support obligation did not decrease by $800 when his child reached eighteen years of age, as contemplated at the time of the original plan confirmation; instead, the Debtor contends the child support obligation will continue at the original monthly amount until the child reaches twenty-one years of age. Thus the proposed modification reduces monthly payments for approximately 34 months of the Plan and the total payout under the Plan is reduced by approximately $28,000.[2]

The Debtor argues that he is entitled to a modification pursuant to § 1329 without supporting the motion with updated Schedules I and J or providing documentation to support changes to income or expenses.[3] Similarly, the Debtor rejects the notion that § 1322(a)(1) in conjunction with the "good faith requirement" could require a debtor to increase plan payments as

---

[1] Specifically, the Confirmation Order provides that: "All property of the estate, including any income, earnings, or other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the Plan shall revest in the Debtor(s); provided however, that no property received by the trustee for the purpose of distribution under the Plan shall revest in the Debtor(s) except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided in the Plan. Such property as may revest in the Debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account."

[2] This change in child support is evidenced only by an Amended Income Withholding order, dated August 25, 2015, that states the amount of monthly withholding is to be $2,000 until further notice. There is no explanation of how or why this change came about.

[3] The Debtor made a motion similar to the instant motion on September 4, 2015, which was denied without prejudice due to the Debtor's failure to file updated Schedules I and J.

a result of having increased income after the time of confirmation. The Debtor argues that Congress' choice not to include § 1325(b)'s projected disposable income test in the subsection of § 1329 that designates which sections of the Code apply to plan modification precludes any analysis whatsoever of disposable income at modification. Nonetheless, the Debtor filed updated Schedules I and J, which reflect no material increase in actual monthly disposable income from the time of confirmation to the time of modification.[4]

In opposition to the Motion, the Trustee argues that the Debtor is subject to a new ability-to-pay analysis, apart from the means test, and is required to submit additional documentation to support current, actual income and expenses. The Trustee requested additional documentation—paystubs for the preceding three months, the Debtor's 2015 tax return, and documentation of the increased expenses reflected in his Amended Schedule J—in order to evaluate the Debtor's proposed modified Plan for compliance with the Code. The Trustee also requested supporting documentation to verify the circumstances surrounding the Debtor's increase in child support obligations.

---

[4] While the Debtor's total monthly net income increased from $7,608.66 to $8,898.92 (approximately $7,000/year increase in gross income) from the time of the original confirmation to modification, the majority of this increase was contemplated at the time of confirmation. (In answer to Question 13 of the original Schedule I, the Debtor disclosed that he was expecting a raise in November of 2014 to $177,000 a year.) Offsetting the increase in income, the Debtor, in his Amended Schedule J, claims an increase in expenses from $6,109.63 at the time of confirmation to $7,398.46, presently. This increase was due to the following changes: an increase in food and housekeeping supplies from $700 to $1,700; an increase in clothing, laundry, and dry cleaning expenses from $60 to $160; an increase in medical and dental expenses from $67 to $294; an increase in transportation expenses from $250 to $475; an increase in other expenses, relating to student loan repayments from $.01 to $171.34; and a decrease in installment and lease payments relating to a vehicle from $365 to $0.

**DISCUSSION**

This case presents the Court with the question of whether a debtor's motion to modify a confirmed plan opens the door to an ability-to-pay analysis apart from the means test of § 1325(b). This question implicates two competing bankruptcy policy goals. On the one hand, opening the door to modifications based upon every increase and/or decrease in income and/or expenses, or every appreciation of property, would undermine a debtor's right to a fresh start, as well as creditors' expectation of payments under the confirmed plan. On the other hand, the quid pro quo of Chapter 13, as distinct from liquidation, is that the debtor is obligated to commit future income in exchange for retaining assets. At confirmation, these competing policies are embodied in § 1325(b)'s projected disposable income analysis, which determines what payments a debtor is required to make to his or her creditors. Upon a modification, § 1329 does not explicitly set forth any mechanism to balance these policies.

*The Plan Confirmation Process*

In exchange for avoiding liquidation, Chapter 13 debtors are required to commit a portion of their future income to the repayment of creditors. *Regan v. Ross*, 691 F.2d 81, 82 (2d Cir. 1982). Debtors repay their creditors through a plan which establishes the amount of money that creditors will be paid. Upon objection, a Chapter 13 plan must either pay all claims in full or "all of the debtor's projected disposable income" must be devoted to creditors during the plan term. § 1325(b)(1).

Under Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[5] a debtor's "projected disposable income" is primarily a mechanical calculation. First, "disposable

---
[5] Pub. L. No. 109-8, 110 Stat. 23.

income" is "current monthly income" less "amounts reasonably necessary to be expended for the maintenance and support of the debtor…." § 1325(b)(2)(A)(i) and (ii). "Current monthly income" is a debtor's average gross monthly income during the last six months pre-petition. §101(10A)(A)(i). Finally, BAPCPA directs that the "amounts reasonably necessary to be expended" in § 1325(b)(2) for above-median income debtors, such as the debtor here, are determined in accordance with statistical standards as provided by in § 707(b)(2)(A) and (B). §1325(b)(3).[6]

This statutory scheme systemizes the amount of income that is to be devoted to Chapter 13 plans by utilizing an objective expense analysis for above-median debtors based on statistical models rather than relying upon a judge's analysis of the actual facts of each case. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 71 (2011). As a result, the Chapter 13 plan is in large part fictional in that the debtor's plan payments are potentially predicated on expenses that are greater than those the debtor actually incurs.[7] *Id.* at 79 ("In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces.").

---

[6] "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [I.R.S.] for the area in which the debtor resides." § 707(b)(2)(A)(ii)(I).

[7] While a debtor must have actual expenses for a particular category, the actual dollar amount of the expense for a particular individual is irrelevant. *See In re Rabener,* 424 B.R. 36, 38 (Bankr. E.D.N.Y. 2010) (absent an unambiguous statutory mandate only actual income and actual expenses that the Debtor will have during the life of the Chapter 13 plan should be taken into consideration on the means test.); *In re Osei*, 389 B.R. 339, 341 (Bankr. S.D.N.Y. 2008) (holding that "a debtor is entitled to deduct the full amount permitted by the Local Standards" for a mortgage/rental expense despite spending a lower amount).

However fictional, the "projected disposable income" analysis of § 1325(b), when accorded the requisite finality due to the confirmation process, is intended to result in Chapter 13 confirmed plans that balance the priorities of a fresh start for debtors and the repayment of creditors, without the need for burdensome re-litigation triggered by every fluctuation in a debtor's financial situation.

*Postconfirmation Modification*

Section 1329 (a) provides the Bankruptcy Court with "broad discretion" to consider motions to modify a confirmed plan. *See, e.g., Salpietro*, 492 B.R. at 637. However, this Court has previously held that this discretion must be balanced by a respect for the finality of the original confirmed plan. With this in mind, the Court has held that, absent a debtor's consent, it will review a proposed modification "only after the Court finds that a debtor has acted in bad faith, or is not in compliance with their plan..." *Id.* Only after satisfying this threshold will this Court upend a confirmed Chapter 13 plan against the debtor's wishes. Upon passing this test, however, the Court believes it is appropriate to conduct a new income and expense analysis, separate and apart from the means test, to determine a debtor's actual ability to pay. *See In re Sunahara*, 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005) (holding that § 1325(b)'s disposable income test does not apply at confirmation but that a debtor's ability to pay is also reviewed under § 1325(a)(3)'s "good faith" requirement); *see also In re Fridley*, 380 B.R. 538 (B.A.P. 9th Cir. 2007) (extending *Sunahara* post-BAPCPA).

Where a debtor is seeking a modification, however, the initial threshold of showing a debtor's bad faith or non-compliance does not apply. *See Roberts*, 514 B.R. at 363. However, a debtor's proposed modified plan must still satisfy the requirements of §§ 1322(a), 1322(b),

1323(c), and 1325(a) of the Bankruptcy Code. *Id*. Applicable here, §1322(a) provides that a plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan…." § 1322(a)(1). The modified plan must also be proposed in good faith under § 1325(a)(3), must meet the "best interest test" of distributing more value to creditors than they would receive in liquidation under § 1325(a)(4), and must be feasible in that the debtor is able to comply with the plan under § 1325(a)(6).

While all agree that § 1325(b)'s means test calculation does not apply upon modification, the Debtor argues that it was Congress' intention to preclude *any* reconsideration of income and expenses upon modification. This argument, however, fails to take into consideration that amended Schedules I and J may be necessary to establish compliance with the requirements of §§ 1325(a) and 1322(a), and the Code as a whole. *See In re Moore*, 446 B.R. 458, 462-63 (Banks. D. Colo. 2011) (Noting that at modification "[c]reditors have a right, and the Chapter 13 Trustee has an obligation, to review a Chapter 13 plan for compliance."). A renewed income and expense analysis is required because "a debtor's income and expenses may be considered when evaluating the totality of circumstances under the good faith modification analysis." *In re Hall*, 442 B.R. 754, 761 (Bankr. D. Idaho 2010). In effect, the ability-to pay analysis subsumed in the good faith requirement is a backstop that applies to scenarios where a debtor's financial conditions have demonstrably changed in a material and unanticipated way.

Generally, it would be inappropriate to substitute wholesale a less comprehensive, discretionary evaluation of a debtor's ability to pay at confirmation when "[t]he most thorough review of a debtor's circumstances … takes place pre-confirmation." *In re Mattson*, 456 B.R. 75, 80-81 (Bankr. W.D. Wash. 2011) *aff'd*, 468 B.R. 361 (B.A.P. 9th Cir. 2012). However, where a

debtor uses § 1329 to seek a downward modification of plan payments upon a material increase in expenses, the Court finds it is appropriate to conduct a new income and expense analysis at the time of such a request in order to consider whether there are *in fact* funds available to continue making payments under the plan as originally confirmed.

Here, while there is some increased gross income as shown in the Amended Schedule I, the Debtor points out that (1) a majority of this increased income was already considered at plan confirmation, and (2) the Debtor's Amended Schedule J shows that the remainder of the increase in income is offset by increases in actual expenses that would have been allowable at confirmation, which results in no net increase in monthly disposable income. *In re Walker,* 114 B.R. 847, 850 (Bankr. N.D.N.Y. 1990) ("Post-confirmation modification by a debtor may be allowed where the modified plan would have been appropriate had the present circumstances existed originally."). Although the Debtor's Amended Schedules I and J do not facially show any excess disposable income sufficient to make the originally contemplated stepped up plan payments, the Trustee questions whether the Debtor's income has been accurately reported, and questions the reasonableness of the expenses taken in Amended Schedule J.

## CONCLUSION

Based upon the Amended Schedules I and J, as filed, this Court concludes that the Plan as confirmed would be rendered unfeasible without a modification that accounts for the Debtor's increased child support expense. Therefore, the Debtor's motion is granted on the condition that the Debtor satisfies the inquiries of the Trustee into actual income and expenses at the time of modification.



**Dated: Central Islip, New York**
**March 1, 2016**

_/s/ Robert E. Grossman_
**Robert E. Grossman**
**United States Bankruptcy Judge**